UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **KIMBERLY DENISE BROWN,** ) | |
| ) | |
| **Claimant,** ) | |
| ) | |
| vs. ) | Case No. 4:17-cv-1324-CLS |
| ) | |
| **NANCY A. BERRYHILL, Acting** ) | |
| **Commissioner, Social Security** ) | |
| **Administration,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION**

Claimant, Kimberly Denise Brown, commenced this action on August 7, 2017, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying her claim for a period of disability, disability insurance, and supplemental security income benefits.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ: (1) improperly considered the opinion of her treating physician; (2) failed to give appropriate weight to her testimony regarding pain and other subjective symptoms; (3) did not include all of her limitations in the hypothetical question to the vocational expert; (4) improperly considered her lack of medical treatment; (5) entered an unacceptably conclusory residual functional capacity finding; and (6) improperly considered her medication side effects. She also asserts that the Appeals Council improperly considered new evidence submitted after the ALJ's decision. Upon review of the record, the court concludes that these contentions are without merit, and the Commissioner's decision is due to be affirmed.

**A.     Treating Physician Opinion**

Claimant first asserts that the ALJ improperly considered the opinion of Dr. Ochuko Odjegba, her treating physician. The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (internal citations omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the

doctor's own medical records." *Id*. (alterations supplied). Additionally, the ALJ is not required to accept a conclusory statement from a medical source, even a treating source, that a claimant is unable to work, because the decision on that issue is not a medical question, but is a decision "reserved to the Commissioner." 20 C.F.R. §§ 404.1527(d) & 416.927(d).

Social Security regulations also provide that, in considering what weight to give *any* medical opinion (regardless of whether it is from a treating or non-treating physician), the Commissioner should evaluate: the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors. *See* 20 C.F.R. §§ 404.1527(c) & 416.927(c). *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

Dr. Odjegba submitted a "Physical Capacities Form" on July 25, 2014. He indicated that claimant could sit, stand, and walk for less than thirty minutes at one time. He expected claimant to need to lie down, sleep, or sit with her legs propped

3

at waist level or above for four hours out of an eight-hour work day. He also stated that claimant's condition would last twelve or more months, and that the conditions causing her limitations included "back ache" and "lumbar disc disease."[1] Dr. Odjegba attached to the Physical Capacities Form a copy of an MRI report of claimant's lumbar spine. The MRI revealed *minor* mutli-level degenerative disc disease but no distinct changes in disc height and no significant narrowing or other abnormalities.[2]

The ALJ rejected Dr. Odjegba's evaluation because it was not supported by the medical evidence, including Dr. Odjegba's own treating records. Specifically, the ALJ stated that Dr. Odjegba's records

> repeatedly reveal normal physical examinations of the claimant. For example, on June 10, 2014, Dr. Odjegba noted no edema and normal range of motion, muscle strength, and stability in the extremities with no pain on inspection. . . . Dr. Odjegba also ordered a[n] MRI, which revealed only minor degenerative joint disease in the lumbar spine, and he concluded that the claimant's lower extremity pain could, instead, be caused by anemia. . . . As noted above, the claimant's pain management records show that her pain is well controlled. In addition, when compliant with treatment, the claimant's hypertension and anemia are well controlled.

Tr. 97 (alteration supplied, record citations omitted).

The ALJ's conclusion was in accordance with applicable law, because the ALJ considered whether Dr. Odjegba's opinion was consistent with the doctor's own

---

[1] Tr. 675.
[2] Tr. 676.

4

records and other medical evidence. *See Phillips*, 357 F.3d at 1240-41. The ALJ's decision also was supported by substantial evidence. There is little evidence of any spinal injury, or any other medically determinable cause for limitations as severe as those imposed by Dr. Odjegba. Even the MRI report that Dr. Odjegba attached to his assessment revealed only *mild* degenerative joint disease and no other significant abnormalities. Moreover, Dr. Odjegba's treatment records revealed normal examination results, including negative straight leg raising test, lack of swelling and normal range of motion, muscle strength, and stability.[3] Dr. Odjegba also opined that claimant's leg pain could have resulted from her anemia, which was well controlled when she was compliant with treatment.[4]

It is true that claimant regularly reported to her pain management doctor in 2015 and 2016 that she experienced back pain that increased upon exertion and improved with medication and rest. Her reported pain level varied from a 6 to a 9, but it improved anywhere from 60-90% with when she took her medication as prescribed, leaving the pain at only minimal levels.[5] In any event, though, claimant's subjective complaints to her physician regarding her level of pain do not constitute medical evidence of her condition.

---

[3] Tr. 633, 638-39, 682, 795.
[4] Tr. 634, 874.
[5] *See* Tr. 825-37, 850-55, 896-98, 940-50.

Finally, claimant attempts to pick apart the opinion of consultative examiner Dr. Sathyan Iyer, who stated on April 26, 2014, that claimant experienced no significant physical limitations but might experience difficulty driving because of decreased distant vision in her left eye.[6] Claimant asserts that Dr. Iyer's consultative opinion cannot constitute substantial evidence to override Dr. Odjegba's treating opinion because Dr. Iyer misstated the nature of claimant's ankle injury and did not review all the medical records regarding her heart condition. Those arguments are irrelevant, however, because the ALJ did not rely upon Dr. Iyer's assessment when he rejected Dr. Odjegba's assessment. In fact, the ALJ assigned only limited weight to Dr. Iyer's assessment because he concluded that claimant's vision impairment was minor and correctable, and because he believed that claimant did suffer *some* limitations as a result of her chronic pain syndrome, hypertension, and microcytic anemia.[7]

## B.     Pain and Other Subjective Symptoms

Claimant also asserts that the ALJ improperly considered her complaints of pain and other subjective symptoms. To demonstrate that pain or another subjective symptom renders her disabled, a claimant must "produce 'evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the

---

[6] Tr. 598.
[7] Tr. 97.

6

alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.'" *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991) (quoting *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). If an ALJ discredits subjective testimony of pain, "he must articulate explicit and adequate reasons." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing *Jones v. Bowen*, 810 F.2d 1001, 1004 (11th Cir. 1986); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986)).

The ALJ in the present case properly applied these legal principles. She found that claimant's medically determinable impairments could reasonably have been expected to produce the symptoms claimant alleged, but that claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible.[8] That conclusion was in accordance with applicable law. *See Marbury v. Sullivan,* 957 F.2d 837, 839 (11th Cir. 1992) ("*After* considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence.") (citing *Wilson v. Heckler,* 734 F.2d 513, 517 (11th Cir. 1984)) (emphasis supplied).

The ALJ also adequately articulated reasons to support her findings. She reasoned that claimant's leg fractures appeared to have completely healed, that

---

[8] Tr. 93.

7

claimant was non-compliant with medications and follow-up treatment, and that she engaged in alcohol and tobacco use that might have exacerbated her conditions. The ALJ also observed that claimant's subjective complaints were not supported by the medical evidence, clinical findings, or objective medical testing, and that medications tended to provide significant relief for claimant's symptoms. The ALJ's conclusions were supported by substantial evidence of record.

## C. Vocational Expert Testimony

Claimant also argues that the ALJ's decision was not supported by substantial evidence because the ALJ did not include of all her impairments in the hypothetical question posed to the vocational expert during the administrative hearing. *See Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1180 (11th Cir. 2011) (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (*per curiam*)) ("'In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.'"). Claimant did not identify any specific impairments that should have been included; instead, she generally asserts that the ALJ should have included *all* the impairments about which she complained. As discussed in the previous section, however, the ALJ properly discredited some of claimant's subjective complaints. She included in the hypothetical question only the limitations that she found were

8

supported by the record. Accordingly, the ALJ's hypothetical question to the vocational expert was not defective.

**D.     Lack of Medical Treatment**

The ALJ found that claimant had the severe impairments of chronic pain syndrome, hypertension, and microcytic anemia.[9] She did *not* find claimant's seizure disorder to be a medically determinable impairment, much less a severe impairment.[10] Claimant contests that finding because, she says, the ALJ improperly drew an adverse inference from her failure to seek additional medical treatment for her seizure disorder, despite the fact that she could not afford additional treatment.

Claimant's brief quotes only part of the ALJ's discussion of her seizure disorder. The entirety of the ALJ's discussion is as follows:

> [T]here does appear to be some indication of a small cerebrovascular accident approximately one year later [*i.e.,* in 2015]. The claimant presented to the emergency department on June 25, 2015, alleging some seizure-like activity. Her blood pressure was elevated and a CT scan of the brain showed small intraparenchymal hemorrhage. . . . A MRI of the brain was consistent with the CT scan, showing the small right periventricular hemorrhage with no evidence of obvious ischemia and was otherwise normal. . . . At follow-up on June 6, 2015, the claimant stated that she did not want any testing done due to her concern about co-pays, but agreed to a CT scan, which showed that the hematoma resolved. . . . As there is no evidence of any residual symptoms or limitations, the undersigned finds the claimant's apparent cerebrovascular accident is a non-severe impairment. It is noted,

---

[9] Tr. 87.
[10] Tr. 90.

9

however, that these symptoms have been considered in the evaluation of the severity of the claimant's hypertension, as the claimant attributed uncontrolled blood pressure to be the cause of the seizures discussed below. As discussed further below, the claimant's noncompliance with hypertension medications and use of alcohol during this time is also considered in evaluating the severity of this impairment.

. . . .

In the case at hand, the claimant presented for a fall during a seizure episode on August 5, 2015 and reported approximately three seizures since that June. She alleged that her seizures produced no loss of consciousness but were followed by fatigue, and that, on August 5, her blood pressure was 216/110 just prior to seizure. . . . However, a CT scan of [her] brain revealed no new evidence of intracranial pathology. . . . She arrived by ambulance to the emergency department on August 14, 2015, after falling down steps during a possible seizure episode, although she was also found to be intoxicated. . . . Finally, she presented again to the emergency department on October 26, 2015 for a reported seizure. . . .

Notably, despite her reports of ongoing seizures, the claimant never followed-up with neurology as instructed and was never placed on any seizure medications. . . . The record contains no actual diagnosis for a seizure disorder. The claimant had no further complaints of seizures, and later physical and mental status examination suggested no residual effects. There are simpl[y] no medical signs or laboratory findings suggestive of a seizure disorder. Thus, the undersigned finds this to be a non-medically determinable impairment.

Tr. 89-90 (alterations supplied, record citations omitted).

Claimant asserts that the ALJ improperly drew an adverse inference from the fact that she did not receive follow-up treatment from a neurologist.[11] As the

---

[11] The court notes that claimant relies upon Social Security Ruling 96-7p, which has been superseded by Social Security Ruling 16-3p. Even so, that improper citation is not material, because Social Security Ruling 16-3p does not differ materially from Social Security Ruling 96-7p with

Commissioner points out, however, the ALJ's conclusion about claimant's failure to see a neurologist was not an adverse inference about the consistency of her subjective complaints with the medical and other evidence of record. Instead the ALJ was considering, at step two of the sequential evaluation process, whether claimant's alleged seizure disorder should be considered a severe impairment.

Moreover, even if the ALJ had considered claimant's failure to seek follow-up neurological treatment in the context of drawing an adverse inference about claimant's credibility, that would not have been fatal to the ALJ's decision. It is true that "poverty excuses [a claimant's] noncompliance" with medical treatment. *Dawkins v. Bowen,* 848 F.2d 1211, 1213 (11th Cir. 1988) (alteration supplied). Thus, "while a remediable or controllable medical condition is generally not disabling, when a 'claimant cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law.'" *Id.* (quoting *Taylor v. Bowen,* 782 F.2d 1294, 1298 (5th Cir. 1986)). The Eleventh Circuit has also held that "when an ALJ relies on noncompliance as the *sole ground* for the denial of disability benefits, and the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment, the ALJ is required to determine whether the claimant was able to afford the prescribed

---

regard to evaluating potential reasons a claimant may not have received additional medical treatment, and the case law applying the former version of the Ruling still is applicable.

treatment." *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (citing *Dawkins,* 848 F.2d at 1214) (emphasis supplied).

Here, although the record does reflect that claimant had some concerns about paying for some of her medical treatment, she never stated that was why she failed to follow up with a neurologist for her potential seizure disorder, and she managed to see other doctors for her other medical conditions. Additionally, claimant never stated that she did not have or was unable to obtain medical insurance. She testified during the administrative hearing that her husband had been working for four months, and that she also relied upon her daughter's income.[12] Most importantly, claimant's failure to see a neurological specialist for her possible seizure disorder was far from the sole reason that the ALJ denied claimant's disability benefits. The ALJ also considered claimant's other medical conditions, her testimony, her medical records, and the opinions of the treating and consulting physicians.

E.   **Residual Functional Capacity Finding**

The ALJ found that claimant retained the residual functional capacity

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can only occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance and stoop; occasionally kneel; never crouch and crawl; and frequently reach, handle, finger, and feel. The claimant should not work in environments with concentrated exposure to extreme cold or wetness or around hazardous conditions such as unprotected heights.

---

[12] Tr. 10-11.

Tr. 92. Claimant asserts that the residual functional capacity finding is "simply conclusory and does not contain any rationale or reference to the supporting evidence, as required by SSR 96-8p."[13] Social Security Ruling 96-8p states, in pertinent part:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.
>
> *Symptoms*. In all cases in which symptoms, such as pain, are alleged, the RFC assessment must:
>
> • Contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate;
>
> • Include a resolution of any inconsistencies in the evidence as a whole; and
>
> • Set forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work.
>
> The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot

---

[13] Doc. no. 10 (Claimant's Brief), at 10.

reasonably be accepted as consistent with the medical and other evidence. In instances in which the adjudicator has observed the individual, he or she is not free to accept or reject that individual's complaints solely on the basis of such personal observations. . . .

SSR 96-8p (emphasis in original).

The ALJ's residual functional capacity finding satisfied these requirements. Contrary to claimant's suggestion, the finding was far from conclusory. The ALJ described in great detail the facts and evidence that supported her conclusion. She evaluated the credibility of claimant's subjective complaints, resolved inconsistencies in the medical records, assigned appropriate weights to various medical opinions, and explained the effects of claimant's impairments on her ability to work on a sustained basis.

Claimant appears to also assert that the residual functional capacity finding was not supported by substantial evidence because there was no formal assessment by a treating or consulting physician of claimant's ability to perform various work functions.[14] It is the ALJ's responsibility — not that of any physician — to determine a claimant's residual functional capacity. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c) ("If your case is at the administrative law judge hearing level or at the Appeals Council review level, the administrative law judge or the administrative appeals judge

---

[14] Claimant does not go so far as to actually articulate such an argument. She cites cases in which a physician's assessment was required, but she does not explain why such an assessment should be required *in this case*.

at the Appeals Council (when the Appeals Council makes a decision) is responsible for assessing your residual functional capacity."). *See also Robinson v. Astrue,* 365 F. App'x 993, 999 (11th Cir. 2010) ("We note that the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors."). An ALJ's residual functional capacity finding still can be supported by substantial evidence, even if the ALJ rejects the only physician opinion regarding the extent of the claimant's limitations. *See Green v. Social Security Administration,* 223 F. App'x 915, 923-24 (11th Cir. 2007). It is true that the ALJ

> has an obligation to develop a full and fair record, even if the claimant is represented by counsel. *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981). The ALJ is not required to seek additional independent expert medical testimony before making a disability determination *if the record is sufficient and additional expert testimony is not necessary for an informed decision*. *Wilson v. Apfel,* 179 F.3d 1276, 1278 (11th Cir. 1999) (holding the record, which included the opinion of several physicians, was sufficient for the ALJ to arrive at a decision); *Holladay v. Bowen,* 848 F.2d 1206, 1209-10 (11th Cir. 1988) (holding the ALJ must order a consultative exam when it is necessary for an informed decision).

*Nation v. Barnhart,* 153 F. App'x. 597, 598 (11th Cir. 2005) (emphasis supplied). Furthermore, claimant bears the ultimate burden of producing evidence to support her disability claim. *See Ellison,* 355 F.3d at 1276 (citing 20 C.F.R. §§ 416.912(a), (c)). The court concludes that the record in this case was sufficient to give substantial support to the ALJ's decision, even though the ALJ's residual functional capacity

finding did not mirror findings of a physician on a Medical Source Opinion, Physical Capacities Evaluation, or other such assessment form.

F.  **Medication Side Effects**

Claimant testified that Norco makes her feel weak, sleepy, and dizzy, such that she can only take it when she is at home lying down, because if she tries to stand she might fall. She only takes Norco one to three times a week, not every day, because she is taking other medications and she likes to space out the Norco because of the dizziness and fatigue it causes.[15] Claimant asserts that the ALJ failed to adequately consider her testimony regarding the side effects of her pain medication, but it is difficult to discern what claimant is alleging that the ALJ should have done differently. Claimant only summarizes her testimony regarding medication side effects and provides a long block quotation from a case in which the district court held that the ALJ failed to make any finding regarding the side effects of the claimant's medications.[16] To the extent that claimant makes the argument that the ALJ failed to make similar findings in this case, she cannot succeed. The ALJ acknowledged claimant's hearing testimony about experiencing dizziness and weakness after taking Norco,[17] but she did not give full weight to that testimony

---

[15] Tr. 44-45.

[16] Doc. no. 10 (Claimant's Brief), at 53-55 (quoting *Waters v. Berryhill,* No. CV 316-002, 2017 WL 694243, at *6-8 (S.D. Ga. Jan. 30, 2017), report and recommendation adopted, No. CV 316-002, 2017 WL 693275 (S.D. Ga. Feb. 21, 2017)).

[17] Tr. 93.

because claimant had consistently denied to her pain management physician that she experienced medication side effects. Moreover, even though claimant reported taking Norco only three times a week due to the side effects it caused, she had run out of her Norco prescription.[18] The ALJ adequately articulated her reasons for rejecting claimant's complaints about the side effects of her medications, and the ALJ's decision was supported by substantial evidence.

**G. New Evidence**

Finally, claimant asserts that the Appeals Council failed to properly consider new evidence that was presented for the first time on appeal.

> When a claimant submits new evidence to the AC [*i.e.,* Appeals Council], the district court must consider the entire record, including the evidence submitted to the AC, to determine whether the denial of benefits was erroneous. *Ingram*[ *v. Commissioner of Social Security Administration*], 496 F.3d [1253,] 1262 [(11th Cir. 2007)]. Remand is appropriate when a district court fails to consider the record as a whole, including evidence submitted for the first time to the AC, in determining whether the Commissioner's final decision is supported by substantial evidence. *Id.* at 1266-67. The new evidence must relate back to the time period on or before the date of the ALJ's decision. 20 C.F.R. § 404.970(b).

*Smith v. Astrue,* 272 F. App'x 789, 802 (11th Cir. 2008) (alterations supplied).

Here, the Appeals Council denied claimant's request for review of the ALJ's decision, stating:

> You submitted medical records from Thomas Lackey, MD, dated

---

[18] Tr. 97.

from March 1, 2016, to May 31, 2016 (5 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not consider and exhibit this evidence.

You submitted medical records from Thomas Lackey, MD, dated from Jul[y] 26, 2016, to September 21, 2016 (6 pages); and medical records from Ochuko Odjegba, MD, dated October 18, 2016 (7 pages). The Administrative Law Judge decided your case through June 21, 2016. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision whether you were disabled beginning on or before June 21, 2016.

If you want us to consider whether you were disabled after June 21, 2016, you need to apply again. . . .

Tr. 2 (alteration supplied).

Once again, claimant has not made any actual argument regarding why the Appeals Council should have made a different decision. Instead, she simply summarizes the new evidence provided to the Appeals Council and includes block quotes from several cases. That is insufficient to carry claimant's burden of demonstrating error in the ALJ's decision.

To the extent an appellate court might construe claimant's brief as asserting an argument that the Appeals Council should have found the new evidence to be chronologically relevant, that argument fails.[19] There is no indication that any of the

---

[19] The closest claimant comes to making an actual argument is when she states: "The submissions concern events that occurred (i.e. treatments that were administered) after the date of the ALJ determination. But that does not necessarily make them chronologically irrelevant." Doc. no. 10 (Claimant's Brief), at 63. While that is an accurate statement of the law, it nonetheless stops short of explaining whether, and, more importantly, *why*, the evidence *is* chronologically relevant.

18

records related back to the time period before the ALJ's decision. Moreover, even if the evidence was chronologically relevant, it was not material, in the sense that it likely would change the outcome of the administrative decision. The new medical records reflect similar symptoms, examination findings, pain levels, and relief from medication as the records submitted to the ALJ. Accordingly, the Appeals Council did not err in its consideration of the additional medical records submitted on appeal, and, even if it did err, any such error was harmless.[20]

**H.     Conclusion**

In summary, the court concludes the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards. Accordingly, the decision of the Commissioner is due to be affirmed. An appropriate order will be entered contemporaneously herewith.

DONE this 17th day of October, 2018.

_____
United States District Judge

---

[20] Claimant also asserts that she submitted records dated November 17, 2016 to March 17, 2017, from Dr. Lackey, but that those documents were omitted from the record and were not mentioned by the Appeals Council. Claimant also did not attach a copy of those records to either of her briefs, so the court cannot review the records to determine if they might change the outcome of the administrative decision. Even so, the summary of those records in claimant's brief does not reflect any significant change from the records submitted before the ALJ's decision. *See* doc. no. 10 (Claimant's Brief), at 4-5.